PRESCOTT & A. C. R. CO. v. ATCHISON, T. & S. F. R. CO. et al.

(Circuit Court, S. D. New York    January 8, 1896.)

1. PLEADING—INTERPRETATION OF COMPLAINT—DEMURRER.
    A complaint is to be interpreted as a whole even on demurrer and on motion to dismiss.

2. RAILROAD COMPANIES—ARRANGEMENTS FOR THROUGH BILLING.
    There is no principle of common law which forbids a single railroad corporation, or two or more of such corporations, from selecting, from two or more other corporations, one which they will employ as the agency by which they will send freight beyond their own lines, on through bills of lading, or as their agent to receive freight, and transmit it on through bills to their own lines, and without breaking bulk; and the right to make such selection is not taken away by the interstate commerce law. New York & N. Ry. Co. v. New York & N. E. R. Co., 50 Fed. 867, explained.

3. CONTRACTS IN RESTRAINT OF TRADE—ACT JULY 2, 1890.
    A contract by which a railroad company arranges with another, to the exclusion of still others, for the interchange of passengers and freight by through tickets and bills of lading, is not a contract in unlawful restraint of trade, within the meaning of the act of July 2, 1890.

This was an action by the Prescott & Arizona Central Railroad Company against the Atchison, Topeka & Santa Fé Railroad Company and other railroad corporations and individuals for alleged unlawful discrimination in refusing to accept freight from the plaintiff company, on through bills of lading, while such freight was accepted and carried on through bills, under a contract with other railroad companies. The case was heard upon a motion, by all of the defendants save one, to direct a verdict in their favor upon the pleadings and opening, the remaining defendant asking judgment in his favor on demurrer.

C. N. Sterry, for the motion.
Delos McCurdy, opposed.

LACOMBE, Circuit Judge (orally).   In this case I have examined the authorities submitted yesterday by the parties on both sides, and have reached the conclusion that the motions to dismiss must be granted.   I am unable, however, in so brief a time to formulate any elaborate opinion; and it will be sufficient to indicate that the lines of thought which lead to this conclusion may be ascertained by reference to the cases of U. S. v. Trans-Missouri Freight Ass'n, 7 C. C. A. 15, 58 Fed. 58, Little Rock & M. R. Co. v. St. Louis S. W. Ry. Co., 11 C. C. A. 417, 63 Fed. 775, and the Dueber Watch-Case Co. Case, 14 C. C. A. 14, 66 Fed. 637; all three being opinions of circuit courts of appeals.

All legislation interfering with the right of the individual, whether he be a natural person or a corporation, to enter into contracts or to exercise his preferences as to the persons with whom he shall do business, should be cautiously construed.   It is legislation of a novel character, and should not be extended beyond the plain import of the language used by the lawmakers.   Stripped of the adjectives and of the averments as to conclusions of law, the gist of this complaint is the making of the particular contract known as "Exhibit A," and

the carrying out of that contract according to its terms, coupled with the further set of facts that, in carrying out that contract according to its terms, the parties thereto necessarily ceased to continue with the plaintiff corporation the relations which had existed before. That contract contemplates, and the acts of the parties defendant set forth in the complaint show, that what was done was to institute a system of interchange of freight and interchange of passengers by the new corporation to and with the other four defendant corporations, and to cease, from and after the execution of that contract or some subsequent date, the further interchange of freight and passengers on through bills, and by through tickets, with the plaintiff corporation. Now, it is true that the complaint contains a single clause, at the close of the sixty-ninth paragraph, which uses the words "by utterly refusing to receive or deliver freight or passengers to or from it." That language, taken in its full scope, imports a refusal to receive freight, that had its origin on the line of the Prescott & Arizona Central Railroad Company, wherever and under whatever circumstances it was tendered. But it is a fair rule of pleading that the complaint is to be interpreted, even upon demurrer and upon motion to dismiss, as a whole; and examining it a second time, after the arguments yesterday, with great care, I am constrained to the conclusion that the case which it makes out is the case stated in general terms in the sixty-ninth paragraph, but set forth specifically and distinctly in the seventy-eighth paragraph, namely, "that the defendants have refused to accept or deliver local and interstate freight at said Seligman [or Prescott Junction] upon through billing from or to the line of the plaintiff, in conjunction with the lines of said defendants, although the said defendants now accept and deliver freight upon through billing from or to the said defendant the Santa Fé, Prescott & Phœnix." And the illustrative cases which are given under another of the paragraphs, the seventy-first, indicate quite clearly that the ground of complaint and the case made by the bill is the refusal to deliver freight on through bills, and without breaking bulk, to the plaintiff corporation, or to receive freight from the plaintiff corporation without breaking bulk, and without rebilling, and the same with regard to passengers,—the refusal to send passengers on through tickets, or to accept through tickets with passengers.

Now, I know of no principle of common law which forbids an individual railroad corporation, or two or three or more corporations, from selecting as to which one of two or more corporations they will employ, as auxiliary to their own lines, as the agency by which they will send freight beyond their own lines, or as their agent to receive freight on the auxiliary line to be transmitted to their own line upon through bills, and without breaking bulk. And I do not find in the interstate commerce law sufficient to warrant the conclusion that the law has been changed in that particular. This court, sitting in May, 1892, at a term where the present judge sat, reached a somewhat different conclusion in New York & N. Ry. Co. v. New York & N. E. R. Co., 50 Fed. 867. Of that case it is to be said that the decision was to some extent induced by the way

in which the case came to the court, after action by the interstate commerce commission, already partially accepted by both sides; and, moreover, there had not been at that time so exhaustive a judicial examination and exposition of the terms of the interstate commerce law as we now find in the authorities, notably in the decisions of circuit courts of appeals. The conclusion is reached, therefore, that this was not a contract in unlawful restraint of trade, within the meaning of the act of July 2, 1890, for the reason that it was not so at common law, was not made so by the interstate commerce statute, and that the act of 1890, as indicated in the Dueber Watch-Case Co. Case and in the Trans-Missouri Case (which have been already cited), is directed solely against contracts which would have been unlawful before the passage of the act.

The further question as to whether the averments of the complaint are sufficient, assuming that the court be in error on this branch of the case, to make out a cause of action against the individual directors, need not be considered. The authorities cited by the defendants are very strongly in support of their motion; but the court prefers to put the decision in this case upon the broader ground.

The motions, therefore, to dismiss as to John J. McCook individually, as to the same as receiver of the Atchison, Topeka & Santa Fé, as to the same as receiver of the Atlantic & Pacific, as to the same as trustee of the Prescott & Arizona Central Railroad Company, as to Russell Sage, as to Cecil Baring, both individually, as to McCook and Crane, as executors of George C. Magoun, and as to John J. McCook, as director of one or more of the railroads named, are granted; and the demurrer of George J. Gould to the bill, on the ground that it does not set forth facts sufficient to constitute a cause of action, is sustained. Judgment is therefore directed in favor of the moving parties for dismissal of the complaint, and the ordinary form of order on demurrer will be signed when presented. An exception is granted as to the whole disposition of the case, and exceptions separately as to each one of the separate motions will be recorded. Stay of 30 days to plaintiff.